**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

GREBIL AVILA MEDINA,　　　　　　　) NO. 5:26-cv-02577-KS
　　　　　　　　　　　　　　　　　)
　　　　　　　　Petitioner,　　　　)
　　　　　　　　　　　　　　　　　) **MEMORANDUM OPINION AND ORDER**
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
TODD BLANCHE et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondents.　　　　)
_____ )

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by Petitioner Grebil Avila Medina ("Petitioner") on May 13, 2026. (Dkt. No. 1.) For the following reasons, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States in 2021 without being inspected or admitted. (Dkt. No. 1 ¶¶ 14-15.) Petitioner has continuously resided in the United States for five years and has no criminal history. (*Id.* ¶ 16.)

On April 9, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") agents and taken to the Adelanto ICE Processing Center, where he remains detained. (*Id.* ¶ 17.) Petitioner's standard removal proceedings under 8 U.S.C. § 1229a are ongoing before the Adelanto Immigration Court. (*Id.* ¶ 18.)

1

On May 13, 2026, Petitioner filed the instant Petition seeking his immediate release from detention, or alternatively, a bond hearing.  (Dkt. No. 1.)  On May 21, 2026, Respondents filed an Answer to the Petition, asserting that "Petitioner's arguments fail to show why [ICE] lacked authority to detain him while removal proceedings progress, and Petitioner may instead utilize administrative remedies to seek a bond hearing before a United States Immigration Judge."  (Dkt. No. 8 at 2.)  Petitioner filed a Reply the next day, contending "that his due process rights have been violated such that his detention is unlawful" and "that exhaustion of administrative remedies is not required."  (Dkt. No. 10 at 2.)

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3).  "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

## DISCUSSION

Petitioner asserts that his detention without a hearing during his standard § 1229a removal proceedings is in violation of his Fifth Amendment Due Process rights and is arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act ("APA").  (Dkt. No. 1 ¶¶ 24-33.)  As relief, Petitioner seeks his immediate release from immigration detention, or alternatively, a bond hearing.  (*Id.* at 8-9.)

## I.      Statutory Detention Authority

The Immigration and Nationality Act ("INA") provides that "if the Department of Homeland Security (DHS) discovers that [a noncitizen] is living in the United States without authorization, it may initiate removal proceedings against the [noncitizen] by sending him a 'notice to appear,'" which "informs the [noncitizen] of, among other things, the charges against him and the time and place of the hearing at which an immigration judge will determine whether the [noncitizen] is to be removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). (citing 8 U.S.C. § 1229(a)). Under § 1229a, "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of [a noncitizen]." § 1229a(a)(1).

Notably, § 1229(a) "does not provide detention authority for noncitizens in standard removal proceedings." *Avalos v. Christopher Chestnut, Warden of the Cal. City Corr. Facility*, No. 1:26-cv-1199 DC-CSK, 2026 U.S. Dist. LEXIS 48257, at *5 (E.D. Cal. Mar. 9, 2026). Rather, § 1226(a), which "'provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal,' . . . applies to noncitizens in standard (§ 1229a) removal proceedings" *Id.* (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).

"[N]oncitizens who fall under § 1226(a) are not subject to mandatory detention." *Lopez v. Immigr. & Customs Enf't*, No. 2:26-cv-1072 DAD CSK, 2026 U.S. Dist. LEXIS 97967, at *7 (E.D. Cal. May 4, 2026) (citing 8 U.S.C. § 1226(a) (1)-(2), (c)) ("Pending a removal decision, the Attorney General may continue to detain an arrested noncitizen, release them on bond, or release them on conditional parole, unless they fall within certain exceptions involving criminal offenses and terrorist activities."). "Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing 'to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Id.* (quoting *Rodriguez Diaz*, 53

F.4th at 1196).  Additionally, § 1226(a) provides that "a detainee may request a bond hearing before an [Immigration Judge (IJ)] at any time before a removal order becomes final" and that "[i]f at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release."  *Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

Here, the record indicates that Petitioner is in standard removal proceedings under § 1229a.  Thus, the Court finds that Petitioner is detained pursuant to § 1226(a).  *Jasdeep S.J. v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-03040-TLN-EFB, 2026 U.S. Dist. LEXIS 109613, at *5 (E.D. Cal. May 15, 2026) ("Because Petitioner is in standard removal proceedings, rather than expedited removal proceedings, Petitioner's detention is governed by § 1226(a) rather than § 1225(b).").

## II.     <u>Administrative Exhaustion</u>

Respondents assert that "Petitioner should be required to pursue administrative remedies by undergoing an immigration judge bond hearing."  (Dkt. No. 8 at 4-5.)  Specifically, Respondents assert that exhaustion is required because each of the factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) is met in this case.  (*Id.*)  However, Petitioner contends that exhaustion is not required because he "asserts constitutional substantive due process claims that are beyond the jurisdiction of the immigration court and Board of Immigration Appeals (BIA)."  (Dkt. No. 10 at 5.)

Although 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," Ninth Circuit precedent may "require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001),

*abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Specifically, Courts may require prudential exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner does not exhaust administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011).

Upon consideration of the *Puga* factors, the Court finds that prudential exhaustion is not required in this case. First, the BIA's expertise is not necessary to decide the question at issue here—whether Petitioner is entitled to a hearing under § 1226(a) and due process. *See Burruel v. Murray*, No. 1:25-cv-01569-DAD-AC, 2025 U.S. Dist. LEXIS 228727, at *8 (E.D. Cal. Nov. 20, 2025) (finding "agency expertise is not necessary to generate a proper record or reach a proper decision" because "[i]t is undisputed by the parties before the court that petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a)" and "[w]hether this court or an immigration court directs that one be provided to petitioner is immaterial"); *Chateauneuf v. Chestnut*, No. 1:26-cv-01073-DC-JDP (HC), 2026 U.S. Dist. LEXIS 39038, at *7-8 (E.D. Cal. Feb. 25, 2026) (waiving "the prudential exhaustion requirement because the relief that the court will grant by this order—a hearing in front of an immigration judge at which Petitioner's eligibility for bond must be considered—is precisely the relief that prudential exhaustion would require"). Second, "relaxation of the exhaustion requirement in this context would not encourage deliberate bypass of the administrative scheme" because "requiring a bond hearing will shift initial decision-making authority back to the immigration court as appropriate." *Id.* Third, "requiring administrative review of the need for a bond hearing is not likely to allow the agency to correct its own mistakes and preclude the need for judicial review." *Id.*

Accordingly, the Court will excuse any prudential exhaustion requirement and next address the merits of Petitioner's habeas claims. *Id.* at *9 ("[T]he court observes that respondents' argument regarding whether petitioner has requested a bond hearing through administrative channels would appear to be at least arguably disingenuous where petitioner's filing of this action . . . has obviously put respondents on notice of petitioner's request just as well, and yet respondents have offered no assurances to this court of plans to afford petitioner the requested bond hearing to which they agree he is entitled.").

## III. <u>Due Process</u>

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). "In the context of civil immigration detention, the two 'regulatory goals' of the Immigration and Nationality Act provisions governing such detention—'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community'—can provide such 'special justification.'" *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

Respondents assert that "Petitioner was not deprived of due process" because "Petitioner has not shown that detention during the pendency of [his removal proceedings], including all future hearings before an Immigration Judge, is punitive or excessive." (Dkt. No. 9 at 4.)

6

However, Respondents have not presented any evidence of a finding that Petitioner poses a danger or is unlikely to appear for future proceedings. "Although '[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings,' 'the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.'" *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest.

As to the first *Mathews* factor, Petitioner has an interest in remaining free from detention because Petitioner has been living in the United States for five years and has established significant community ties, as evidenced by the multiple letters of support provided on his behalf. (*See* Dkt. No. 1-4.) *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("[Petitioner] has been out of custody for nearly a year-and-a-half, and during that time, has lawfully worked fulltime, has become an active member of his community, and regularly volunteers at his temple. His detention denies him that freedom."); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding that private interests can include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high where, as here, Petitioner has been detained without being "provided any procedural safeguards to determine whether his detention is justified." *Singh*, 803 F. Supp. 3d at 1047; *see also Zapata*, 801 F. Supp. 3d 919, 938 (N.D. Cal. 2025) ("Even though the statutory protections of section 1226(a) require only a prompt post-deprivation hearing, we conclude here that the high risk of erroneous deprivation in this case likely means that a pre-deprivation hearing is constitutionally necessary.").

Finally, as to the third *Mathews* factor, "[t]he effort and cost required to provide Petitioner with procedural safeguards is minimal." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, at *17-18 (C.D. Cal. Aug. 26, 2025) (finding that "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal).

"On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained." *Singh*, 803 F. Supp. 3d at 1048. Additionally, "the government's failure to articulate an individualized interest in detaining Petitioner, including in these habeas proceedings, violates Petitioner's right to substantive due process." *Rios v. Mattos*, No. 2:26-cv-01522-RFB-EJY, 2026 U.S. Dist. LEXIS 133356, at *9 (D. Nev. June 16, 2026). Accordingly, the Court concludes that Petitioner's detention is in violation of his due process rights and will next address the appropriate relief.[1]

---

[1] The Court declines to separately address Petitioner's APA claim because the arguments in Petitioner's APA and due process claims are duplicative, and the Court has already concluded that Petitioner is entitled to relief based on his due process claims.

8

## IV.    Relief

Petitioner seeks his immediate release, or alternatively, a bond hearing.  "Considering § 1226(a)'s discretionary detention framework, and the absence of any prior release on bond pursuant to § 1226(a), this Court finds that an order directing respondents to provide a bond hearing, rather than immediate release, is the appropriate remedy."  *Lopez v. Warden, Cent. Valley Annex*, No. 1:26-cv-03666 DAD CSK, 2026 U.S. Dist. LEXIS 129506, at *11 (E.D. Cal. June 10, 2026) (citing 8 U.S.C. § 1226(a)(1)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (explaining that "the specific harm [petitioner] alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a)").  Accordingly, the Court grants Petitioner's alternative request for relief in the form of a bond hearing.

### ORDER

For the reasons discussed above, the Petition is **GRANTED**.  Respondents are ordered to provide Petitioner with a bond hearing before an Immigration Judge within three (3) days of this Order.  Judgment will be entered accordingly.

DATE: July 6, 2026

_Karen L. Stevenson_
HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE